UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARSEN GRAPHICS, INC.,

        Plaintiff,                              Case No. 1:23-cv-10642

v.                                                Honorable Thomas L. Ludington
                                                      United States District Judge
XPO LOGISTICS FREIGHT, INC.,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In August 2022, Plaintiff Larsen Graphics Inc., a graphic design and print business in Michigan, sent custom prints to a customer in Florida on two separate occasions. Plaintiff shipped its prints using Defendant XPO Logistics Freight, Inc., a national motor carrier. Although both sets of prints were delivered by Plaintiff to Defendant in good condition, they were significantly bent, cracked, and chipped upon arrival in Florida. Accordingly, Plaintiff sent its Florida customer replacement prints and paid additional shipping costs to do so. In March 2023, Plaintiff filed a Carmack Amendment claim against Defendant, seeking to recover nearly $50,000 Plaintiff calculated it lost across both shipments. Currently before this Court are Plaintiff's Motion to Compel Discovery and Motion for Summary Judgment.

     Plaintiff's Motion to Compel will be denied in part, because Defendant produced the relevant discovery in late October 2023. But Plaintiff's Motion to Compel will be granted in part, to the extent it seeks reasonable costs and fees incurred in filing the Motion, because Defendant's discovery production was untimely, and the delay was unjustified.

Plaintiff's Motion for Summary Judgment will be granted in its entirety because it is undisputed that Plaintiff's prints were given to Defendant's in good condition, arrived in damaged condition, and that Plaintiff suffered $47,912.78 in actual monetary loss.

## I.

Plaintiff Larsen Graphics, Inc. is a graphic design and print business based in Vassar, Michigan. ECF No. 1 at PageID.1–2. Defendant XPO Logistics Freight, Inc. is a national motor carrier with its principal place of business in Ann Arbor, Michigan.[1] *Id.* at PageID.1 In August 2022, Plaintiff, by and through its freight broker, Freight Buddy, Inc.,[2] arranged for Defendant to transport two shipments of Plaintiff's "custom printed materials" from Michigan to a customer in Orlando, Florida. *Id.* at PageID.2–3. But neither shipment was successful, and both sets of Plaintiff's prints were significantly damaged upon arrival in Orlando. *See id.* at PageID.3.

The first shipment occurred on August 10, 2022, when Defendant loaded two boxes of Plaintiff's custom prints—valued at $19,728.40—into one of its trucks at Plaintiff's office in Vassar, Michigan. *Id.* at PageID.3. Plaintiff initially paid $1,244.40 for freight costs. *Id.* at PageID.4. Although the prints were new and in good condition when loaded into Defendant's truck, they were significantly damaged by the time they arrived in Orlando eight days later. *See* ECF Nos. 1-3 at PageID.16; 1-4 at PageID.18. Defendant's delivery receipt noted the damage and

---

[1] Defendant advertises itself as a recognized leader in the less-than-truckload freight industry, transporting products that do not require a full truckload to 31,000 customers throughout "99% of all US zip codes . . . plus Canada, Mexico, and the Caribbean." *See About Us: We Put Your Freight First*, XPO https://www.xpo.com/about-us/ (last visited Apr. 3, 2024) [https://perma.cc/YB58-5KJZ].

[2] Freight Buddy, Inc. allows shippers like Plaintiff, to choose from several different carriers, similar to Defendant, online. Once a shipper chooses a carrier, they can schedule a shipment and print a "custom made Bill of Lading" for the shipment directly from Fright Buddy's website. *See Buddy's Bio > How it Works*, FREIGHT BUDDY, https://freightbuddy.com/terms.html (last visited Apr. 3, 2024) [https://freightbuddy.com/terms.html].

noted the shrink wrap surrounding the boxes of Plaintiff's prints was no longer intact. ECF No. 1-3 at PageID.16. An independent damage inspection revealed one box protecting a set of Plaintiff's prints was "completely missing" and the shrink wrap surrounding the other box was removed. ECF No. 1-4 at PageID.18. Further, the damage report noted Plaintiff's prints were bent, cracked, and chipped beyond repair, and had no known "salvage value." *Id.*

Accordingly, Plaintiff sent its Orlando customer "an entirely new order of custom printed materials" priced at an additional $19,728.40. ECF No. 1 at PageID.5. Plaintiff paid an additional $1,392.64 in freight costs for this replacement shipment. *Id.* Plaintiff filed an internal damages claim with Defendant, seeking the full value of the damaged prints. *Id.* But Defendant only offered Plaintiff $3,300.00 because, Defendant claimed, their liability as a carrier was capped at $2.00 per pound pursuant to an "AFS Transportation Agreement."[3] *Id.* Notably, the straight bill of lading[4] for the August 10, 2022 shipment was not signed by Plaintiff and did not limit carrier liability whatsoever. *See* ECF No. 1-2 at PageID.14.

The second shipment began on August 17, 2022 when Defendant picked up two more boxes of Plaintiff's custom prints from Plaintiff's office in Michigan, to be delivered to the same

---

[3] The "AFS Transportation Agreement" was effectuated by Defendant and Con-Way Freight, a nonparty. *See* ECF No. 17-4 Plaintiff was not a party to this agreement. *Id.*

[4] "The bill of lading is the basic shipping contract between the shipper-consignor and the carrier." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). A carrier "must issue a bill of lading for any property received for interstate shipment." *CSX Transp., Inc. v. Meserole St. Recycling*, 618 F. Supp. 2d 753, 765 (W.D. Mich. 2009) (citing 49 U.S.C. § 11706(a)). "A bill of lading has three purposes: (1) it records that a carrier has received goods from the party that wishes to ship them; (2) it defines the terms governing the carriage; and (3) it serves as evidence of the contract for carriage." *Id.* (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004); *see also* Evan Tarver, *Bill of Lading: Meaning, Types, Example, and Purpose*, INVESTOPEDIA (last updated Feb. 19, 2024), https://www.investopedia.com/terms/b/billoflading.asp [https://perma.cc/7M5D-974D]. *Straight* bills of lading are commonly used when a carrier transports goods from the shipper directly to the buyer, who has typically already paid for the goods. *See Straight Bill of Lading*, XPO, https://www.xpo.com/cdn/files/s1/Bill-of-Lading-Form_2024.pdf (last visited Apr. 4, 2024) [https://perma.cc/WB9W-MAZW].

customer in Florida. ECF No. 1 at pageID.5. The shipped prints were valued at $25,672. *Id.* at PageID.5–6. Plaintiff paid $1,267.98 in freight costs. *Id.* at PageID.6. Like the first shipment, the prints were placed in Defendant's trucks in new condition but were damaged when they arrived in Florida five days later. *See* ECF Nos. 1-6 at PageID.22; 1-7 at PageID.24. Defendant's delivery receipt noted the shrink wrap protecting the prints was not intact. ECF No. 1–6 at PageID.22. An independent damage inspection revealed the boxes had been crushed, ripped, and torn, and noted the prints were bent, cracked, and that one of the prints had "what appear[ed] to be a bird poop stain." ECF No. 1-7 at PageID.24. The damage inspector noted they were "[u]naware of any salvage value or repairability" for the prints. *Id.*

So, Plaintiff sent its Orlando Customer another set of custom prints identical to the ones damaged in the second shipment and paid an additional $1,853.26 in freight costs. ECF No. 1 at PageID.7. Plaintiff filed another damages claim with Defendant, seeking the full value of the damaged prints, but Defendant denied the claim without explanation. *Id.* Like the August 10, 2022 shipment, the straight bill of lading for this August 17, 2022 shipment also did not limit carrier liability. ECF No. 1-5 at PageID.20.

In March 2023, Plaintiff filed a Complaint asserting one Carmack Amendment claim against Defendant under 49 U.S.C. § 14706 and seeking $47,858.68 in total damages—representing Plaintiff's actual loss from both shipments, minus the $3,300 Defendant already paid Plaintiff to compensate it for the August 10, 2022 shipment. *See* ECF No. 1. Plaintiff also seeks attorney's fees. *Id.* at PageID.9.

Plaintiff filed a motion to compel Defendant's answers to discovery requests in October 2023, ECF No. 16, and filed a motion for summary judgment on its sole Carmack Amendment claim the following month. ECF No. 17. Both motions will be addressed in turn.

**II. Plaintiff's Motion to Compel**

**A.**

On August 7, 2023, Plaintiff served Defendant with its first set of interrogatories and document requests. ECF No. 16-2. Defendant's response deadline was September 6, 2023. ECF No. 16 at PageID.67; FED. R. CIV. P. 33(b)(2) (requiring response within 30 days after being served). On September 7, 2023, Plaintiff had not received a response so Plaintiff's Counsel emailed Defense Counsel asking when Defendant would produce the requested discovery. ECF No. 16-3 at PageID.93–94. Defense Counsel responded two minutes later that he was "[w]orking on them this afternoon as we speak." *Id.* at PageID.93. Five days later—six days after Defendant's deadline—Defense Counsel emailed Plaintiff's Counsel asking for "another two weeks to respond to [the] discovery requests." *Id.* at PageID.92. Plaintiff's Counsel responded that, since the discovery cutoff at the time was less than one week away, Plaintiff would only agree to adjourn Defendant's response deadline if Defendant agreed to adjourn other related deadlines. *Id.* at PageID.91. Defendant agreed, and Plaintiff accordingly filed the Parties' Joint Motion to Adjourn the Scheduling Order, ECF No. 14, on September 18, 2023, which this Court granted. ECF No. 15.

On September 26, 2023—two weeks after Defense Counsel sought a two-week extension—Defendant had still not responded to Plaintiff's discovery requests. ECF No. 16 at PageID.68. So, the next day, Plaintiff's Counsel emailed Defense Counsel asking when Plaintiff could expect Defendant's responses. ECF No. 16-3 at pageID.96. Defense Counsel did not respond. On October 2, 2023, Plaintiff's Counsel again emailed Defense Counsel inquiring about the overdue discovery responses and notifying Defense Counsel that Plaintiff would be filing a

motion to compel discovery, since the adjourned discovery deadline was the next day. *Id.* at PageID.96; *see also* ECF No. 15 at PageID.60.

On October 3, 2023, Plaintiff filed a motion to compel Defendant to respond to its August 7, 2023 discovery requests, ECF No. 16-2, and to sanction Defendant under Rule 37(a) for reasonable attorney's fees and costs Plaintiff incurred as a result of Defendant's unresponsiveness. ECF No. 16. Defendant did not respond until nearly two months later, on December 6, 2023. ECF No. 19. Defendant argues Plaintiff's Motion is moot because Defendant finally responded to Plaintiff's first set of interrogatories on *October 17, 2023*, and responded to Plaintiff's document requests on *October 24, 2023*. ECF No. 19 at PageID.178–79. Plaintiff replied that, although the discovery issue may be moot given Defendant's production, its Motion also seeks reasonable costs and fees incurred because Defendant's production was untimely—and that issue is still ripe for review. ECF No. 20.

**B.**

Civil Rule 37 governs discovery failures. Rule 37(a)(3)(B) allows a party to file a motion to compel discovery if, after good faith attempts to confer outside of court, the nonmovant has not answered interrogatories submitted under Rule 33 or has not produced documents requested under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iii)—(iv). And Rule 37(a)(5)(A) provides that, if the nonmovant answers the interrogatories or produces the requested documents *after* the movant filed a motion to compel, "the court *must*, after giving an opportunity to be heard, *require* the [nonmovant] to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A) (emphasis added). As the language of Civil Rule 37(a)(5)(A) suggests, "[t]he award of costs is the norm, rather than the exception." *O'dell v. Hope Network W. Michigan/Michigan Educ. Corps*, No. 20-CV-11192, 2022 WL 2194660, at *8 (E.D. Mich. June 17, 2022) (quoting *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 220 (W.D. Mich. 2018)).

## C.

Plaintiff will be awarded reasonable costs, including attorney's fees, incurred for filing its Motion to Compel, ECF No. 16. Plaintiff made good-faith attempts to obtain the answers to its first set of interrogatories and requested documents from Defendants multiple times before seeking Court intervention. Plaintiff's Counsel emailed Defense Counsel the day after the initial response deadline to ask Defendant when it would produce the requested discovery. ECF No. 16-3 at PageID.93. Plaintiff agreed to a two-week adjournment of Defendant's discovery deadline, despite the fact that Defendant asked for an adjournment six days *after* its responses were initially due. *See id.* at PageID.92. After those two weeks had come and gone, and Plaintiff still had not received its requested discovery, Plaintiff's Counsel again emailed Defense Counsel for a status update. ECF No. 16-4 at PageID.96. But Defendant did not reply. *See id.* Indeed, Plaintiff filed its Motion to Compel on the last day of the scheduled discovery period—October 3, 2023—giving Defendant every chance to produce the answers and documents Plaintiff requested—on August 7, 2023—before the close of discovery. *See* ECF No. 15.

And although Defendant finally produced all requested discovery by October 24, 2023, its untimeliness was not justified, and no circumstances make Plaintiff's request for reasonable costs and attorney's fees unjust. Defendant argues that, based on conversations during a settlement conference on October 4, 2023—the day after Plaintiff filed its Motion to Compel— it "thought

the need for the motion to compel had been resolved." ECF No. 19 at PageID.179. Not so. Indeed, as Defendant recognizes in its response, Defendant was informed during the settlement conference that "even though [Defendant] was not disputing [Plaintiff's] ability to recover" under the Carmack Amendment, "[Plaintiff] was *entitled* to receive [Defendant's] Answers to [Plaintiff's] First Set of Interrogatories and Requests for Production of Documents." *Id.* at PageID.179 (emphasis added). Why did Defendant wait twenty more days to comply with discovery? Defendant does not say.

Accordingly, Plaintiff's Motion to Compel, ECF No. 16, will be denied in part, to the extent it seeks to compel Defendant to produce discovery that Defendant has already produced, albeit far after its deadline to do so. But Plaintiff's Motion to Compel, ECF No. 16, will be granted in part, to the extent it seeks to sanction Defendant for its untimely production, in the form of reasonable attorney's fees[5] and costs. Plaintiff will be directed to file a bill of costs reflecting its reasonable expenses, including attorney's fees, incurred in filing its Motion to Compel, ECF No. 16.[6]

### III. Plaintiff's Motion for Summary Judgment

Turning to the merits, Plaintiff filed its Motion for Summary Judgment on November 27, 2023. ECF No. 17. Plaintiff argues Defendant is strictly liable on Plaintiff's Carmack Amendment claim, in the amount of $47,912.78.[7] ECF No. 17 at PageID.113–19.

---

[5] As explained *infra* Section III.C, there is a genuine dispute as to whether attorney's fees are recoverable on the merits of Plaintiff's claim under the Carmack Amendment, 49 U.S.C. § 14706. The attorney's fee award here, as a sanction for Defendant's untimely discovery production under Civil Rule 37, is a separate issue.

[6] Plaintiff also requests costs and attorney's fees incurred in filing the Parties' Joint Motion to Adjourn the Scheduling Order, ECF No. 14, because it argues this Motion was necessitated by Defendant's untimely discovery production. See ECF No. 16 at PageID.66–67. But both Parties agreed to this adjournment for different reasons. *See* ECF Nos. 14; 16-3 at PageID.91–92. And the mandatory terms of Rule 37(a)(5)(A) only allow a movant to recover the "reasonable expenses," including attorney's fees, "incurred in making" the *motion to compel* discovery, not motions to adjourn scheduling orders. FED. R. CIV. P. 37(a)(5)(A).

[7] Plaintiff does not explain the $53.32 difference between this value and the amount of loss pleaded in its Complaint. *Compare* ECF No. 17 at PageID.113 ($47,912.78) *with* ECF No. 1 at PageID.9

## A.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

($47,858.68). But, as discussed *infra* Section III.C., Defendant does not dispute that $47,912.78 accurately reflects Plaintiff's actual loss.

**B.**

Before the Carmack Amendment, carriers who transported goods across state lines were subject to non-uniform state laws governing liability if the goods were damaged in transit. *See* Wesley S. Chused, *The Evolution of Motor Carrier Liability Under the Carmack Amendment into the 21st Century*, 36 TRANSP. L.J. 177, 179–80 (2009). Enacted in 1906, the Carmack Amendment "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). Notably, the Amendment "only applies to shipping contracts that begin in one state and terminate in another. It does not apply to shipping contracts where shipment begins and ends in the same state." *Strong v. Passport Auto Logistics, LLC*, No. 16-14169, 2018 WL 352891, at *4 (E.D. Mich. Jan. 10, 2018)

Codified at 49 U.S.C. § 14706(a), the Carmack Amendment holds motor carriers strictly liable to the shipper for damage to its cargo unless the shipper has agreed to some limitation in writing. *Exel, Inc.*, 807 F.3d at 148. This strict-liability scheme "relieves shippers of the burden of determining which carrier caused the loss as well as the burden of proving negligence." *Id.* Specifically, 49 U.S.C. § 14706(a) provides that motor carriers are strictly "liable to the person entitled to recover under the . . . bill of lading" for the "actual loss or injury to the property caused by" the carrier, and § 14706(d) provides shippers with a private right of action to recover this "actual loss or injury" from responsible carriers.

To state a *prima facie* case under the Carmack Amendment, a shipper plaintiff must establish that (1) the goods were delivered to the carrier in good condition; but (2) arrived at the destination in damaged condition; and (3) the shipper suffered monetary harm or loss. *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964); *Super Serv. Motor Freight Co. v. United States*, 350 F.2d 541, 542 (6th Cir. 1965) ("[T]he shipper establishes his prima facie case when he

shows delivery in good condition, arrival in damaged condition, and the amount of damages."); *Renouf v. Aegis Relocation Co. Corp.*, 641 F. Supp. 3d 439, 445 (N.D. Ohio 2022). Once a shipper plaintiff establishes a *prima facie* claim under the Carmack Amendment, the burden shifts to the carrier defendant to show "both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Elmore & Stahl*, 377 U.S. at 138. The five "excepted causes" of damage that would relieve the carrier of liability are (1) an act of God; (2) an act of terrorism or war; (3) an act of the shipper itself; (4) an act of public authority; or (5) the goods' inherent vice or nature. *See id.* at 137; *Delta Rsch. Corp. v. EMS, Inc.*, No. 04-60046, 2005 WL 1981775, at *2 (E.D. Mich. Aug. 16, 2005).

## C.

Plaintiff has proven a *prima facie* case for its Carmack Amendment claim. As a threshold matter, the bills of lading for both August 2022 shipments did not limit Defendant's liability as a motor carrier. *See* ECF Nos. 1-2 at PageID.14; 1-5 at PageID.20. Plaintiff established its brand-new prints were given to Defendant, at Plaintiff's place of business in Michigan, in good condition:



ECF No. 17 at PageID.115. Plaintiff also established that, upon arrival in Orlando, Florida, its prints were significantly damaged:



ECF No. 17-3 at PageID.137–40; *see also* ECF No. 1-3 at PageID.16 (noting prints shipped on August 10, 2023 were "damaged" upon arrival); 1-4 at PageID.18 (noting prints shipped on August 10, 2022 were bent, cracked, and chipped upon arrival) 1-7 at PageID.24 (noting prints shipped on August 17, 2022 were bent, cracked, and apparently stained by "bird poop").

Plainttiff also established its $47,912.78 actual loss, consisting of the value of the damaged prints and associated shipping costs for both August 2022 shipments. *See* ECF No. 17 at PageID.116–17.

Defendant did not attempt to meet its shifted burden to prove it was not neglgient and that the an "excepted cause" damaged Plaintiff's prints. Instead, Defendant conceeds that Plaintiff is entitled to summary judgment on its Carmack Claim. In response to Plaintiff's Motion for Summary Judgement, ECF No. 17, Defendant notes it is "willing to pay $47,912.78 to [Plaintiff] to compensate [it] for its actual loss under the Carmack Amendment." ECF No. 21 at PageID.230. Defendant "admits" Plaintiff's prints arrived in Orlando "in a damaged condition" and does not dispute that $47,912.78 represents Plaintiff's actual loss from the two August 2022 shipments. *Id*. at PageID.232. Thus, Defendant "admits it is obligated to pay [Plaintiff]" this amount under the Carmack Amendment. *Id.* Plaintiff is accordingly entitled to summary judgment on its Carmack Amendment claim.

The only disputed issue is whether Plaintiff is *additionally* entitled to attorney's fees under the Carmack Amendment. Plaintiff argues attorney's fees are recoverable, but suggests the issue should be resolved separately, through post-judgment briefing. ECF Nos. 17 at PageID.111, 117 n. 2; 22 at PageID.238. Defendant argues attorney's fees are not recoverable under the Carmack Amendment and asks this Court to deny Plaintiff's request for attorney's fees at this juncture. ECF No. 21 at PageID.233. Because Plaintiff's Motion for Summary Judgment did not seek attorney's fees, explicitly reserving the issue for post-judgment proceedings, and because motions for attorney's fees are typically filled post judgment, this Court will not decide the issue at this stage.

Notably, Defendant's argument is nevertheless persuasive. The Carmack Amendment "does not contain a general attorney fee provision[.]" *Osman v. Int'l Freight Logistics, Ltd*., 405 F. App'x 991, 993 (6th Cir. 2011) (citing *Accura Sys., Inc. v. Watkins Motor Lines, Inc*., 98 F.3d 874, 876 (5th Cir.1996)). Indeed, most courts within the Sixth Circuit have repeatedly recognized that attorney's fees are ordinarily unavailable to successful Carmack Amendment claimants. *See*

*Next F/X, Inc. v. DHL Aviation Americas, Inc.*, 429 F. Supp. 3d 350, 362 n. 9 (E.D. Ky. 2019) ("While there is very limited case law on this issue within the Sixth Circuit, an award of attorneys' fees ordinarily should be unavailable under the Carmack Amendment." (internal citations omitted)); *Fields v. Allied Van Lines, Inc.*, 570 F. Supp. 3d 511, 517 (W.D. Ky. 2021); *Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495, 519 (N.D. Ohio 2009) (finding carrier defendant's argument that no attorney's fees were recoverable "more prolific and persuasive" than shipper plaintiff's contrary argument and noting "attorney's fees ordinarily should be unavailable under Section 14706 of the Carmack Amendment"). Although an exception applies to "household goods" damaged in transit, *Fields v. Allied Van Lines, Inc.*, 570 F. Supp. 3d 511, 517 (W.D. Ky. 2021) (citing 49 U.S.C. § 14708), and although some courts within the Sixth Circuit have suggested in dicta that attorney fees are theoretically recoverable under the Carmack Amendment in the "interests of justice," *Custom Rubber Corp.*, 633 F. Supp.2d at 519, it is unclear how either situation applies here. The Parties may address the issue further throughout post-judgment briefing.

In sum, Plaintiff is entitled to summary judgment on its Carmack Amendment Claim because the applicable bills of lading did not limit Defendant's carrier liability and because it is undisputed that Plaintiff suffered actual monetary loss when its prints were delivered in good condition to Defendant but were damaged upon arrival to Plaintiff's customer in Florida. So, Plaintiff's Motion for Summary Judgment will be granted and Defendant will be directed to pay Plaintiff $47,912.78, together with interest, to compensate for Plaintiff's actual loss from the August 2022 shipments.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion to Compel, ECF No. 16, is **DENIED IN PART,** to the extent it seeks to compel discovery that Defendant already produced.

Further, it is **ORDERED** that Plaintiff's Motion to Compel, ECF No. 16, is **GRANTED IN PART**, to the extent it seeks reasonable costs and attorney's fees for Defendant's untimely discovery production.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to file a bill of costs accounting for its reasonable expenses, including attorney's fees, incurred in filing its Motion to Compel, ECF No. 16, **on or before April 29, 2024.** Defendant may file a response to Plaintiff's bill of costs **on or before May 13, 2024.**

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

Further, it is **ORDERED** that Judgment is **ENTERED** for Plaintiff in the amount of $47,912.78 in damages, plus interest.

**This is a final order and closes the above-captioned case.**

Dated: April 15, 2024                                            s/Thomas L. Ludington
                                                                 THOMAS L. LUDINGTON
                                                                 United States District Judge